1  DOUGLAS J. CLARK, State Bar No. 171499 (dclark@wsgr.com)
   IGNACIO E. SALCEDA, State Bar No. 164017 (isalceda@wsgr.com)
2  DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
   JOHN D. COOKE, State Bar No. 233267 (jcooke@wsgr.com)       **ORIGINAL**
3  WILSON SONSINI GOODRICH & ROSATI                            **F I L E D**
   Professional Corporation
4  650 Page Mill Road                                          DEC - 5 2006
   Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300                                  RICHARD W. WIEKING
   Facsimile:   (650) 565-5100                                 U.S. DIST
6                                                              NORTHERN DIST

7  Attorneys for Defendant
   Thomas I. Unterberg            **E-Filing**

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11
   CITY OF ANN ARBOR EMPLOYEES'         )   CASE NO.:  **C 06 7453 SBA**
12 RETIREMENT SYSTEM, on Behalf of Itself and )
   All Others Similarly Situated, and Derivatively )  NOTICE OF REMOVAL TO THE
13 on Behalf of Nominal Defendant        )   UNITED STATES DISTRICT COURT
   ELECTRONICS FOR IMAGING, INC.,        )   FOR THE NORTHERN DISTRICT OF
14                                        )   CALIFORNIA UNDER 28 U.S.C.
              Plaintiff,                  )   § 1441(a)
15                                        )
         vs.                              )
16                                        )
   GUY GECHT, GILL COGAN, JEAN-LOUIS      )
17 GASSEE, JAMES S. GREENE, DAN           )
   MAYDAN, FRED ROSENZWEIG, THOMAS I.     )
18 UNTERBERG, and JOSEPH CUTTS,           )
                                          )
19            Defendants,                 )
                                          )
20       - and -                          )
                                          )
21 ELECTRONICS FOR IMAGING, INC.,         )
                                          )
22            Nominal Defendant.          )
                                          )
23                                        )
   _____ )
24

25        PLEASE TAKE NOTICE that defendant Thomas I. Unterberg, a New York citizen,

26 hereby removes to this Court the state court action described below:

27

28

1       1.      On November 22, 2006, an action was commenced in the Superior Court for the

2   County of San Mateo, entitled *City of Ann Arbor Employees' Retirement System v. Gecht et al.*,

3   Case No. CIV 459145.  A copy is attached as Exhibit A.

4       2.      Defendant Thomas I. Unterberg appeared and accepted service of process in this

5   action.  A copy of the notice is attached as Exhibit B.

6       3.   .  This action is a civil action of which this Court has original jurisdiction under 28

7   U.S.C. § 1332, and is one which may be removed to this Court pursuant to the provisions of 28

8   U.S.C. § 1441(a) in that it is a civil action wherein the amount in controversy exceeds the sum of

9   $75,000, exclusive of interest and costs, and is between citizens of different states.

10      4.      Plaintiff's complaint does not allege an amount of damages but defendant is

11  informed and believes that the amount at issue exceeds the jurisdictional minimum of this Court.

12      5.      At the time of the filing of this action, Thomas I. Unterberg was, and still is, a

13  citizen of the State of New York.

14      6.      The complaint does not identify Plaintiff's citizenship.  Defendant is informed

15  and believes that Plaintiff is a citizen of Michigan, a state where no defendant resides.

16  Accordingly, complete diversity of citizenship exists.

17      7.      Defendant is informed and believes that none of the other defendants have been

18  served in this action.  *See* 28 U.S.C. § 1441(b) (diversity action is removable only if none of the

19  "parties in interest properly joined and *served* as defendants is a citizen of the State in which

20  such action is brought.") (emphasis added); *Republic Western Insurance Co. v. Oxford Property*

21  *& Cas. Ins. Co.*, 765 F. Supp. 628 (N.D. Cal. 1991) (holding removal proper where out-of-state

22  defendant removed before local defendant was served).

23      8.      Accordingly, all of the requirements of 28 U.S.C. § 1332 are present and less than

24  30 days have elapsed between service of this suit and this Notice of Removal as is required by 28

25  U.S.C. § 1446(b), therefore this action may properly be removed to this Court under 28 U.S.C.

26  § 1441(a).

27      9.      The First Cause of Action in Plaintiff's complaint is allegedly on behalf of a class

28  of holders of Electronics for Imaging ("EFI") stock.  Defendant is informed and believes that the

1  putative class consists of more than 50 persons. *See, e.g.*, Complaint ¶ 59 (alleging that there are

2  over 59 million shares of EFI stock outstanding).

3        10.     The complaint alleges omission of material facts and manipulation in connection

4  with EFI's stock option grants.

5        11.     Accordingly, this action is removable to this Court under the Securities Litigation

6  Uniform Standards Act of 1998 (SLUSA), § 101(b), 15 U.S.C. § 77(c) ("[a]ny covered class

7  action brought in any State court involving a covered security . . . shall be removable to the

8  Federal district court for the district in which the action is pending"); *Kircher v. Putnam Funds*

9  *Trust*, __ U.S. __, 126 S.Ct. 2145, 2154 (2006) (SLUSA authorizes removal of cases set forth in

10  15 U.S.C. § 77(b), "namely, those with claims of untruth, manipulation, and so on"); *Merrill*

11  *Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, __ U.S. __, 126 S.Ct. 1503, 1515 (2006) (under

12  SLUSA, "covered class action" applies to holders of securities as well as to buyers and sellers).

13

14                              Respectfully submitted,

15  Dated:  December 5, 2006          WILSON SONSINI GOODRICH & ROSATI

16                              Professional Corporation
                                650 Page Mill Road

17                              Palo Alto, CA  94304-1050

18                      By:        *Ignacio Salceda*

19

20                        Attorneys for Defendant
                        Thomas I. Unterberg

21

22

23

24

25

26

27

28

# EXHIBIT A

11/21/2006 14:55 FAX 650 3  82        ANDERLINI                                    ☑004/033

1   Merrill G. Emerick (State Bar No. 117248)
    ANDERLINI, FINKELSTEIN, EMERICK & SMOOT
2   A PROFESSIONAL CORPORATION
    400 South El Camino Real, Suite 700
3   San Mateo, CA 94402
    Telephone: (650) 348-0102
4   Facsimile: (650) 348-0962

5   Stuart M. Grant
    Michael J. Barry
6   Cynthia A. Calder
    Mary S. Thomas (State Bar No. 175110)
7   GRANT & EISENHOFER P.A.
    Chase Manhattan Centre
8   1201 N. Market Street
    Wilmington, DE 19801-2599
9   Telephone: (302) 622-7000
    Facsimile: (302) 622-7100

10

    *Attorneys for Plaintiff*
11  *City of Ann Arbor Employees' Retirement System*

**FILED**
SAN MATEO COUNTY

NOV-2 2 2006

Clerk of the Superior Court
By
DEPUTY CLERK

AFE/MGE

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                  **FOR THE COUNTY OF SAN MATEO**

14  CITY OF ANN ARBOR EMPLOYEES'           )
    RETIREMENT SYSTEM, on behalf of itself )
15  and all others similarly situated, and derivatively )   Case No. CIV:  CIV 4 5 9 1 4 5
    on behalf of Electronics For Imaging, Inc., )
·16                                          )
17              Plaintiff,                  )   COMPLAINT
                                            )
        v.                                  )
18                                          )   Breach of Fiduciary Duty
    GUY GECHT, GILL COGAN, JEAN LOUIS       )   Unjust Enrichment
19  GASSEE, JAMES S. GREENE, DAN            )   Request for Accounting
    MAYDAN, FRED ROSENZWEIG, THOMAS         )   Request for Injunctive Relief
20  I. UNTERBERG, and JEFFREY CUTTS,        )   Request for Declaratory Judgment
                                            )
21              Defendants,                 )
                                            )
22          and                             )
                                            )
23  ELECTRONICS FOR IMAGING, INC.,          )
                                            )   **BY FAX**
24              Nominal Defendant.          )
                                            )
25

26          Plaintiff alleges:

27

28

                                        1

COMPLAINT                               11025214.tif - 11/21/2006 2:59:41 PM

## SHAREHOLDER'S DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff City Of Ann Arbor Employees' Retirement System ("Plaintiff"), on behalf of itself and all others similarly situated, and derivatively on behalf of Electronics For Imaging, Inc. ("EFI" or the "Company"), makes the following allegations upon information and belief, except the allegations relating to itself, which it makes upon personal knowledge. Plaintiff's information and belief is based on its investigation (made by and through its attorneys), which investigation included, among other things, a review and analysis of: (1) public documents relating to the Company and the Defendants; (2) EFI's filings with the U.S. Securities and Exchange Commission ("SEC"); (3) analyst reports concerning the Company; and (4) newspaper and magazine articles (and other media coverage) regarding EFI and its business. Many of the facts supporting the allegations contained herein are known only to the Defendants and/or the Nominal Defendant or are exclusively within their possession, custody and/or control. Plaintiff believes that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery.

### I. INTRODUCTORY ALLEGATIONS

1.     On June 7, 2006, the Board of Directors of EFI (the "Board") sought and obtained shareholder approval to amend the Company's 2004 Equity Incentive Plan to increase the shares authorized for issuance thereunder by 4,500,000 shares, to consolidate the Company's other stock option plans into the 2004 Equity Incentive Plan, and to approve an amendment to the Company's 2000 Employee Stock Purchase Plan to extend and amend a provision that provides for the automatic increase in the number of shares authorized for issuance under that plan. The 4.5 million new shares authorized for issuance under the 2004 Equity Incentive Plan have a value pursuant to the Black-Scholes methodology of valuing options in excess of $49 million, and their issuance will dilute existing shareholders' ownership interests by almost 8%.

2.     Unbeknownst to shareholders, however, the Board solicited shareholders' support for these amendments by concealing the fact that, from at least 1996 through 2003, the Board had improperly manipulated stock option grants to certain of its current or former directors,

2

1   senior officers and other employees.  As explained in detail below, this practice (referred to as

2   "backdating") violated the express terms of EFI's shareholder approved stock option plans and

3   caused EFI to (i) publish numerous false and misleading financial statements, and (ii) solicit

4   shareholder votes for amendments to EFI's stock option plans using false and misleading proxy

5   statements.  In addition, the improper manipulation of stock option grant dates has resulted in (or

6   will in the future result in) the unjust enrichment of the corporate executives who received

7   "backdated" stock options or other forms of compensation in exchange for "backdated" stock

8   options.

9          3.     The effect of the improper manipulation of stock option grants from 1996 through

10  2003 renders the financial disclosures contained in the Company's 2005 Form 10-K (filed March

11  16, 2006) ("EFI 2005 Form 10-K") false and materially misleading.  Although not incorporated

12  into EFI's 2006 Proxy Statement (filed May 1, 2006) ("EFI 2006 Proxy"), the Company mailed

13  the EFI 2005 Form 10-K to the shareholders concurrently with the EFI 2006 Proxy, and the

14  financial disclosures in the Company's 10-K affected the "total mix" of information available to

15  shareholders in connection with the shareholder action requested in the EFI 2006 Proxy.

16  Accordingly, the Company's failure to correct this misinformation in the EFI 2006 Proxy

17  rendered the solicitation materials deficient.  Moreover, the EFI 2006 Proxy's omission of the

18  backdating practices rendered it false and misleading.

19         4.     For the reasons set forth below, therefore, the shareholder vote on June 7, 2006,

20  approving the amendments to the 2004 Equity Incentive Plan and the 2000 Employee Stock

21  Purchase Plan should be voided, and any options or stock issued by the Company pursuant to

22  either amendment should be cancelled and/or rescinded.

23                              **II. THE PARTIES**

24          **Plaintiff**

25         5.     Plaintiff is a retirement system for employees of the City of Ann Arbor,

26  Michigan administered by a Board of Trustees established pursuant to the Ann Arbor City

27  Code.  Plaintiff is presently a shareholder of EFI and has been a shareholder at all times

28  relevant to the claims asserted herein.

#### Nominal Defendant

6.    Nominal defendant EFI is a Delaware corporation with its principal executive offices located at 303 Velocity Way, Foster City, California.  According to its filings with the SEC, the Company is a world leader in digital controllers, "superwide" format printers and inks and print management solutions.  Its common stock trades on the NASDAQ National Market under the ticker symbol EFII.  As of April 17, 2006, there were 57,086,152 shares outstanding of EFI's common stock.

#### The Director Defendants

7.    Defendant Guy Gecht ("Gecht") is and has been the Chief Executive Officer of the Company since January 1, 2000.  He is and has been a member of the Company's board of directors since 2000.  From July 1999 to January 2000, Gecht was the President of the Company.  From January 1999 to July 1999, Gecht was Vice President of the Company and from October 1995 through January 1999, he was Director of Software Engineering.

8.    Defendant Gill Cogan ("Cogan") is and has been a member of the Company's board of directors since 1992.

9.    Defendant Jean Louis Gassee ("Gassee") is and has been a member of the Company's board of directors since 1990.  Gassee is and has been a member of the Compensation Committee of the board of directors (the "Compensation Committee") since the Compensation Committee was formed in August 1992. The Compensation Committee administered the Company's executive compensation programs, including its stock option plans, at all times relevant to the allegations herein.

10.    Defendant James S. Greene ("Greene") is and has been a member of the Company's board of directors since 2000.

11.    Defendant Dan Maydan ("Maydan") is and has been a member of the Company's board of directors since 1996.

12.    Defendant Fred Rosenzweig ("Rosenzweig") is and has been a member of the Company's board of directors since 2000.  Rosenzweig is and has been the President of the Company since January 1, 2000.  From July 1999 to January 2004, he was Chief Operating

4

1  Officer. From August 1998 to July 1999, Rosenzweig was Executive Vice President and from

2  January 1995 to August 1998, he was Vice President, Manufacturing and Support. From May

3  1993 to January 1995, he was Director of Manufacturing.

4          13.    Defendant Thomas I. Unterberg ("Unterberg") is and has been a member of the

5  Company's board of directors since 1990. Unterberg was a member of the Compensation

6  Committee from February 2, 1995 until at least April 17, 2003.

7          14.    Defendants Gecht, Cogan, Gassee, Greene, Maydan, Rosenzweig and Unterberg

8  are collectively referred to as the "Director Defendants."

9                 **Officer Defendant**

10          15.    Defendant Jeffrey Cutts ("Cutts") is EFI's Chief Operating Officer, having

11  served in that position since January 2004. Prior to becoming the COO, Cutts was EFI's Chief

12  Financial Officer, and held that position from April 2000 to April 2006.

13          16.    By virtue of the Defendants' positions as directors and/or officers, they are or

14  have been in a fiduciary relationship to EFI, and the Company's public shareholders, and owe

15  or owed to EFI and its public shareholders the highest obligations of good faith, fair dealing,

16  due care and candor, and have or had an obligation to protect and preserve the assets and

17  interests of EFI.

18          **III. DEFENDANTS CONSTITUTED THE CONTROL GROUP OF EFI**

19          17.    Defendants Gecht, Cogan, Gassee, Greene, Maydan, Rosenzweig, Unterberg

20  and Cutts (collectively, the "Director and Officer Defendants") constituted the control group of

21  EFI during the years at issue in this action. In addition to holding seven out of eight seats on

22  the board of directors of EFI during the relevant timeframe, they also occupied the Chief

23  Executive Officer, Chief Operating Officer and President positions. In addition, the Director

24  and Officer Defendants, and the EFI officers beholden to them, owned 6,587,659 shares – an

25  11.3% voting block – when they sought an additional 4.5 million shares for issuance to

26  themselves and their underlings through stock option grants. In short, they had every position

27  and tool of power at EFI and wielded that power for their own personal benefit at the expense

28  of EFI's public shareholders.

5

COMPLAINT          11025214.tif - 11/21/2006 2:59:41 PM

18.     The Director and Officer Defendants controlled, *inter alia*, the dissemination

of information to shareholders through EFI's public filings (proxy statements, Forms 10-K,

etc.), the proposals put to shareholder vote at EFI's annual meetings and the administration of

stock option grants to themselves and to those whose allegiance they could guarantee through

lucrative stock option grants.

19.     It was the Director and Officer Defendants who proposed to EFI's public

shareholders that 4.5 million EFI shares be dedicated to the Company's stock option plan.

They secured the public shareholders' approval for that proposal through materially misleading

financial statements and proxy statements that failed to disclose or account for the Director and

Officer Defendants' stock option backdating activity.  As a result, they improperly extracted

from the public shareholders a portion of the economic value and voting power of the public

shareholders' shares and redistributed that economic value and voting power to themselves and

to the EFI employees under their control.  The public shareholders were uniquely and

individually harmed, and the Director and Officer Defendants and EFI employees were

correspondingly benefited.  Thus, the public shareholders who make up the Class (defined

below) in this action are entitled to recover for themselves that economic value and voting

power the Director and Officer Defendants expropriated from them.

20.     EFI was simultaneously harmed by the Director and Officer Defendants'

breaches of fiduciary duty.  EFI was made to dedicate 4.5 million of its shares to the stock

option plan through defendants' misrepresentations and omissions to shareholders – shares EFI

should have been able to retain in treasury for other, legitimate corporate purposes.  As such,

EFI has a cause of action against the Director and Officer Defendants to compel the restoration

to its treasury of the 4.5 million shares.

21.     Under Delaware law, the state in which EFI is incorporated, plaintiff may

pursue both the direct, class action claims and the derivative claims asserting EFI's rights

simultaneously in this action. *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. Supr. 2006).  A

transaction whereby a control group of the corporation secures for itself a portion of the

economic value and voting power of the public shareholders' shares gives rise to both direct

6

1    claims for the public shareholders and claims on behalf of the corporation which may also be

2    pursued derivatively by the plaintiff shareholder.  Thus, plaintiff may simultaneously pursue

3    direct, class action claims on behalf of EFI's public shareholders and derivative claims on

4    behalf of EFI which are based upon the same breaches of fiduciary duty by the Director and

5    Officer Defendants.

6                        **IV. JURISDICTION AND VENUE**

7         22.    Jurisdiction is proper in this Court pursuant to California Code of Civil Procedure

8    § 410.10, because EFI is located in San Mateo County, California and because all of the conduct

9    alleged herein occurred in San Mateo County, California.

10                          **V. FACTUAL BACKGOUND**

11       A.      **General Background**

12        23.    Companies award stock options to give employees the right to purchase shares

13   of the company's stock.  The employees do so by paying the company a set price in exchange

14   for the shares.  The price is referred to as the "exercise price" and is typically fixed at the

15   company's closing stock market price on the same date the option was granted.  This is

16   referred to as granting options "at the money."

17        24.    An "at the money" option is not immediately valuable to the executive.  This is

18   because, at the time the option is first awarded, the amount the executive must pay to acquire

19   the shares (*i.e.*, the exercise price) and the stock market trading price at which he could sell

20   them are the same.  There is, therefore, no gain to be had by exercising the option because the

21   executive would merely break even.  Granting the option "at the money," by design, gives the

22   executive extra incentive to work toward increasing the Company's stock market price above

23   the fixed exercise price so the option has value.

24        25.    Over time, when the company's stock price rises above the fixed exercise price,

25   the option becomes valuable; it is then referred to as being "in the money."  After a fixed

26   period of time has elapsed since the option was first granted (referred to as the "vesting

27   period"), the executive can pay the exercise price, acquire the shares, sell them for an amount

28   greater than the exercise price he paid and thereby realize a profit.  In other words, the

                                              7



1  executive can "buy low and sell high" just like a shareholder hopes to do.  In this way, option

2  grants are designed to align the interests of corporate executives with those shareholders in a

3  way that cash compensation cannot.  Many companies emphasize this alignment of interests in

4  proxy statements seeking to convince shareholders that approving lucrative stock options for

5  executives is a good idea.

6          26.    Prior to 1995, EFI's stock option plans permitted the issuance of "in the money"

7  options.  In a proxy statement dated April 3, 1995 (the "1995 Proxy Statement"), however, the

8  Company's board of directors solicited shareholder approval to, among other things, amend the

9  Company's then-existing stock option plans to provide that the exercise price of options shall not

10  be less than 100% of the fair market value of the Company's common stock on the date of grant.

11  The 1995 Proxy Statement explained:

12          The Board of Directors is seeking approval of the amendments to the 1989
13          [Stock] Plan and the 1990 [Stock] Plan (i) to provide that the Company will not
              grant options at less than 100% of the fair market value of the Company's
14          Common Stock on the date the option is granted (ii) to allow the transfer
              of...shares from the 1989 Plan to the 1990 Plan and (iii) to increase the number of
15          shares reserved for issuance under the 1990 Plan by an additional 950,000
              shares....
16

17          27.    The board emphasized its belief that the amendments "[we]re necessary to

18  properly incentivize [sic] the Company's current and future employees."  EFI's shareholders

19  gave their approval for this amendment on May 4, 1995.

20          28.    Ever since then, however, the Defendants have lied to shareholders about stock

21  option pricing and concealed from them the existence of backdating.

22          B.    **EFI's Stock Option Plans**

23          29.    At all relevant times since 1995, the Company's operative stock plans provided

24  that the exercise price of any options issued thereunder would and did carry an exercise price

25  of not less than 100% of the fair market value of the Company's stock on the date the option is

26  granted.  Specifically, the Company's proxy statements disclosed that the exercise price of

27  stock options granted to its employees (a) may not be less than 100% of the fair market value

28  of the Company's common stock on the date the option is granted, and/or (b) must be at least

                                          8

1 equal to the prevailing market value of a share of the Company's common stock on the date the

2 options are granted.

3       **1.**    **The 1990 Plan**

4      30.    As discussed above, in 1995, the Electronics for Imaging, Inc. 1990 Stock Plan

5 (the "1990 Plan") was amended to specifically prohibit the granting of "in the money" options.

6 The 1990 Plan authorized the issuance of stock options to employees and consultants of the

7 Company.

8      31.    As of September 1996, the 1990 Plan provided, in pertinent part, as follows:

9 Option Exercise Price and Consideration.

10    (a)    The per share exercise price for the Shares to be issued pursuant to
exercise of an Option shall be such price as is determined by the Board, but shall

11 be subject to the following:

12       (i)    In the case of an Incentive Stock Option

13         (A) granted to an Employee who, at the time of the grant of such
Incentive Stock Option, owns stock representing more than ten percent (10%) of

14 the voting power of all classes of stock of the Company or any Parent or
Subsidiary, the per Share exercise price shall be no less than 110% of the Fair

15 Market Value per Share on the date of grant.

16         (B) granted to any Employee, the per Share exercise price shall be
no less than 100% of the Fair Market Value per Share on the date of grant.

17

18       (ii)    In the case of a Nonstatutory Stock Option

19         (A)  granted to a person who, at the time of the grant of such
Option, owns stock representing more than ten percent (10%) of the voting power

20 of all classes of stock of the Company or any Parent or Subsidiary, the per
Share exercise price shall be no less than 110% of the Fair Market Value per
Share on the date of the grant.

21         (B)  granted to any person, the per Share exercise price shall be

22 no less than 100% of the Fair Market Value per Share on the date of grant.

23 1990 Plan, ¶ 8.

24      32.    Further, the 1990 Plan defined the term "Fair Market Value" to be the closing

25 price of the Company's stock trading on NASDAQ the last market trading day prior to the date

26 of a grant. 1990 Plan, ¶ 2(k).

27

28

                                        9

1

2        **2.    The 1999 Plan**

3        33.    EFI adopted the Electronics for Imaging, Inc. 1999 Equity Incentive Plan (the

4    "1999 Plan") on March 29, 1999.  The 1999 Plan expanded the scope of those eligible to

5    receive option grants to include not just employees and "consultants" to EFI, but also non-

6    employee directors as well. 1999 Plan, ¶ 1.

7        34.    At all relevant times, the 1999 Plan, like the 1990 Plan, expressly precluded the

8    granting of "in the money" options, subject only to the provision that an option issued as a

9    replacement for another cancelled option could carry a lower exercise price if granted in

10   accordance with Section 424(a) of the Internal Revenue Code. The 1999 Plan, as amended as

11   of June 24, 2003, stated, in relevant part, as follows:

12       (B) EXERCISE PRICE OF AN INCENTIVE STOCK OPTION. Subject to the
         provisions of subsection 5(b) regarding Ten Percent Stockholders, the exercise
13       price of each Incentive Stock Option shall be not less than one hundred percent
         (100%) of the Fair Market Value of the stock subject to the Option on the date the
14       Option is granted. Notwithstanding the foregoing, an Incentive Stock Option may
         be granted with an exercise price lower than that set forth in the preceding
15       sentence if such Option is granted pursuant to an assumption or substitution for
         another option in a manner satisfying the provisions of Section 424(a) of the
16       Code.

17       (C) EXERCISE PRICE OF A NONSTATUTORY STOCK OPTION. The
         exercise price of each Nonstatutory Stock Option shall be not less than one
18       hundred percent (100%) of the Fair Market Value of the stock subject to the
         Option on the date the Option is granted. Notwithstanding the foregoing, a
19       Nonstatutory Stock Option may be granted with an exercise price lower than that
         set forth in the preceding sentence if such Option is granted pursuant to an
20       assumption or substitution for another option in a manner satisfying the
         provisions of Section 424(a) of the Code.

21   1990 Plan, ¶ 6.

22       35.    Similarly, like the 1990 Plan, the 1999 Plan defined the term "Fair Market

23   Value" to be the closing price of the Company's stock on NASDAQ on the last trading day

24   prior to any option grant. 1999 Plan, ¶ 2(N).

25       **3.    The 2004 Plan**

26       36.    Finally, on April 29, 2004, EFI adopted the Electronics for Imaging, Inc. 2004

27   Equity Incentive Plan (the "2004 Plan").  Like the 1999 Plan, the 2004 Plan authorized the

28

---

10



issuance of stock options to employees, directors (including non-employee directors) and "consultants" of EFI. 2004 Plan, ¶ 1.

37.     Like its predecessor plans, the 2004 Plan specifically prohibited the issuance of "in the money" stock options (subject only to the provision that an option grant could carry a lower exercise price if granted "pursuant to an assumption or substitution for another option in a manner satisfying the provisions of Section 242(a) of the [Internal Revenue] Code"). The 2004 Plan stated, in pertinent part, as follows:

> (b) Exercise Price of an Incentive Stock Option. Subject to the provisions of subsection 5(b) regarding Ten Percent Stockholders, the exercise price of each Incentive Stock Option shall be not less than one hundred percent (100%) of the Fair Market Value of the stock subject to the Option on the date the Option is granted. Notwithstanding the foregoing, an Incentive Stock Option may be granted with an exercise price lower than that set forth in the preceding sentence if such Option is granted pursuant to an assumption or substitution for another option in a manner satisfying the provisions of Section 424(a) of the Code.

> (c) Exercise Price of a Nonstatutory Stock Option. The exercise price of each Nonstatutory Stock Option shall be not less than one hundred percent (100%) of the Fair Market Value of the stock subject to the Option on the date the Option is granted. Notwithstanding the foregoing, a Nonstatutory Stock Option may be granted with an exercise price lower than that set forth in the preceding sentence if such Option is granted pursuant to an assumption or substitution for another option in a manner satisfying the provisions of Section 424(a) of the Code.

2004 Plan, ¶ 6.

38.     Like the 1990 Plan and the 1999 Plan, the 2004 Plan defined the term "Fair Market Value" to be the closing price of the Company's stock on NASDAQ. 2004 Plan, ¶ 2(n).

**C.     EFI's Improper Backdating of Stock Options**

39.     From 1996 through 2003, as reported in the Company's proxy filings, the Company made at least the following option grants to the officers and directors, including the defendants named herein, as reflected in the table below:

| Option Recipient | Purported Grant Date | Exercise Price | Number of Options Granted |
|---|---|---|---|
| Dan Avida | 7/15/1996 | $25.63 | 150,000 |
|  | 8/4/1998 | $13.75 | 100,000 |
|  | 3/24/1999 | $33.81 | 130,000 |
| Jeffrey Lenches | 7/15/1996 | $25.63 | 44,000 |

11

| Name | Date | Price | Shares |
|---|---|---|---|
| Fred Rosenzweig | 7/15/1996 | $25.63 | 44,000 |
| | 8/4/1998 | $13.75 | 37,000 |
| | 3/24/1999 | $33.81 | 110,000 |
| | 1/2/2001 | $13.75 | 140,000 |
| | 8/11/2003 | $19.45 | 150,000 |
| Eric Saltzman | 7/15/1996 | $25.63 | 30,000 |
| | 8/4/1998 | $13.75 | 30,000 |
| | 3/24/1999 | $33.81 | 60,000 |
| Mark Lee | 1/22/1996 | $15.54 | 10,000 |
| | 8/4/1998 | $13.75 | 15,000 |
| | 3/24/1999 | $33.81 | 50,000 |
| | 1/2/2001 | $13.75 | 75,000 |
| | 8/11/2003 | $19.45 | 87,000 |
| Janice Smith | 8/4/1998 | $13.75 | 30,000 |
| Guy Gecht | 3/24/1999 | $33.81 | 110,000 |
| | 1/2/2001 | $13.75 | 175,000 |
| | 8/11/2003 | $19.45 | 175,000 |
| Gill Cogan (Outside Director) | 8/4/1998 | $13.75 | 15,000 |
| | 3/24/1999 | $33.81 | 18,000 |
| | 1/2/2001 | $13.75 | 20,000 |
| Dan Maydan (Outside Director) | 8/4/1998 | $13.75 | 15,000 |
| | 3/24/1999 | $33.81 | 18,000 |
| | 1/2/2001 | $13.75 | 20,000 |
| Jean Louise Gassee (Outside Director) | 8/4/1998 | $13.75 | 15,000 |
| | 3/24/1999 | $33.81 | 18,000 |
| | 1/2/2001 | $13.75 | 20,000 |
| Thomas Unterberg (Outside Director) | 8/4/1998 | $13.75 | 15,000 |
| | 3/24/1999 | $33.81 | 18,000 |
| James Greene (Outside Director) | 3/24/1999 | $33.81 | 18,000 |
| | 1/2/2001 | $13.75 | 20,000 |

40.    Notwithstanding the clear prohibition in the 1990 Plan (as amended), the 1999 Plan, and the 2004 Plan, a review of the Company's history of granting stock options reveals that EFI granted options on dates that just happened to mark notable troughs in the price of the Company's stock.  For example, the grants reflected in the table above that purportedly occurred on July 15, 1996 were made at the lowest share price during the calendar quarter and following a one-month share price decline of approximately 26%.  Similarly, the grants that purportedly occurred on August 4, 1998 were at the lowest share price for the calendar quarter and followed a share price decline of approximately 32% in the three-month period prior to the

12

COMPLAINT                    11025214.tif - 11/21/2006 2:59:41 PM



1    grant. In the three months following the August 4, 1998 grants, however, the share price

2    surged approximately 85%. In another example, the grants that purportedly occurred on March

3    24, 1999 followed an approximately 5% drop in share price in the three months prior to the

4    grant date and preceded a share price run-up of more than 50% in the three months following

5    the grant date. In yet another example, the grants that purportedly occurred on January 2, 2001

6    were at the low price for the calendar quarter and followed a four month price decline of more

7    than 29%. In the three months following January 2, 2001, the share price rose more than 40%.

8        41.    This pattern cannot be attributed to happenstance. The statistical odds of

9    "hitting the lottery" by fortuitously choosing the precise date to grant options so as to

10   maximize the profit for the grant recipient – and to do so multiple times – are astronomical.

11   Indeed, the reason for the highly improbable pattern depicted in the foregoing table is the

12   purported grant date reported in the proxy statements was *not* the true date on which the stock

13   option grants were made. Instead, the Compensation Committee improperly backdated or

14   otherwise manipulated these stock option grants to select dates that were most favorable to the

15   option grant recipients, and most costly to the Company.

16       42.    In fact, that EFI regularly backdated stock options is revealed with reference to

17   the option grant that purportedly occurred on August 11, 2003. Specifically, although the

18   Sarbanes-Oxley Act and SEC Rule 16a-3(g)(1) (which were in effect as of August 11, 2003)

19   required recipients of option grants to file reports on SEC Form 4 disclosing such grants within

20   48-hours, Defendants Gecht, Rosenzweig and Cutts did not disclose the receipt of any options

21   purportedly granted on August 11, 2003, until they filed Form 4s on September 5, 2003,

22   disclosing options purportedly issued almost a month earlier at $19.45. But by the time these

23   Defendants disclosed this grant, the Company's stock price had increased by almost $5 per

24   share, from $19.45 on August 11 to an intraday high of $23.99 on September 5th. This resulted

25   in a grant of undisclosed compensation of over $400,000 to these three Defendants on this

26   single option grant.

27

28

---

13

**D.    EFI's Failure To Disclose This History Of Backdating**
**Rendered The Company's Solicitation of Shareholder Action**
**In Connection With The 2006 Proxy Statement False And Misleading**

43.    EFI's 2006 Proxy for the annual meeting to be held June 7, 2006 sought, among other things, to obtain shareholder approval for:  (a) amendments to the Company's 2004 Plan to (i) increase the number of shares of common stock authorized for issuance thereunder by an aggregate 4.5 million shares, and (ii) consolidate the shares otherwise available for award grant purposes under other equity compensation plans then maintained by the Company into the Company's 2004 Plan; and (b) an amendment to the Company's 2000 Employee Stock Purchase Plan to extend and increase an automatic share increase feature beginning with calendar year 2006 and continuing through calendar year 2012 by an amount equal to three-quarters of one percent of the total number of shares of common stock outstanding on the last trading day of December in the immediately preceding year.

44.    EFI's 2006 Proxy described the Company's stock option plans generally, stated that the plans "are intended to align stockholder and employee interests by creating a direct link between long-term rewards and the value of the Company's shares," provided information concerning past options grants to defendants Gecht, Rosenzweig, Cutts, Cogan, Gassee and Maydan under the Company's 1990 Plan, the 1999 Plan and/or the 2004 Plan, provided information concerning past option grants to defendant Unterberg under the 1999 Plan, stated that a total of 1,299,305 shares of the Company's common stock remained subject to issuance upon the exercise of options granted to executive officers and directors collectively under the 1990 Plan, the 1999 Plan, and the 2004 Plan, and falsely stated that "[t]he stock plans authorize the Compensation Committee to award stock options to employees at any time....The exercise price per share of the stock options is equal to the closing price of a share of the Company's Common Stock on the day the options are granted."

45.    In addition, the 2006 Proxy failed to disclose that: (a) some or all of the options previously granted to Defendants Gecht, Rosenzweig, Cutts, Cogan, Gassee and Maydan were either backdated or received in exchange for backdated stock options; (b) the Company's stock

14

1 │ option plans had not been administered in accordance with the terms of the plans for which

2 │ shareholders had previously given their approval; and (c) the backdating of stock options

3 │ would cause significant adverse accounting and tax consequences to the Company.

4 │     46.    The 2006 Proxy disclosed the following with respect to the compensation paid

5 │ to Defendants Gecht, Rosenzweig and Cutts:

6

**Summary Compensation Table**

| Name and Principal Position | Year | Salary(1) ($) | Bonus(1) ($) | Awards Other Annual Compensation ($) | Restricted Stock Awards ($) | Securities Underlying Options/ SARS (#) | LTIP Payouts ($) | All Other Compensation ($) |
|---|---|---|---|---|---|---|---|---|
| Guy Gecht | 2005 | 570,000 | 395,006 | | 736,661 | 216,667 | | 9,000 |
| Chief Executive | 2004 | 570,000 | — | | — | — | | 8,900 |
| Officer | 2003 | 480,000 | 593,640 | | — | 175,000 | | 8,800 |
| Fred Rosenzweig | 2005 | 510,000 | 556,646 | | 566,661 | 166,667 | | 9,000 |
| President | 2004 | 510,000 | — | | — | — | | 8,900 |
| | 2003 | 460,000 | 502,960 | | — | 150,000 | | 8,800 |
| Joseph Cutts Chief Operating | | | | | | | | |
| Officer and | 2005 | 350,000 | 339,566 | | 340,000 | 100,000 | | 9,000 |
| Corporate | 2004 | 350,000 | — | | — | — | | 8,900 |
| Secretary | 2003 | 300,000 | 218,240 | | 986,000 | 87,000 | | 8,800 |

16 │ 2006 Proxy at 30 (emphasis supplied).

17 │     47.    The disclosures in the 2006 Proxy Statement regarding the compensation paid

18 │ to Defendants Gecht, Rosenzweig and Cutts in 2003 were materially misleading because, as

19 │ explained above, each of these individuals received options that purportedly were granted on

20 │ August 11, 2003, but which were, in fact, backdated. As a result, the disclosed compensation

21 │ to Gecht, Resenzweig and Cutts, as disclosed in the 2006 Proxy Statement, was significantly

22 │ understated.

23 │     48.    Concurrently with the 2006 Proxy Statement, EFI also provided its 2005 Form

24 │ 10-K to shareholders. Although purporting not to incorporate the 2005 Form 10-K into the

25 │ proxy solicitation materials, the 2006 Proxy represented that "[t]he Annual Report on Form 10-

26 │ K of the Company, for the fiscal year ended December 31, 2005, has been mailed concurrently

27 │ with the mailing of the Notice of Annual Meeting and Proxy Statement to all stockholders

28 │ entitled to notice of and to vote at the Annual Meeting." 2006 Proxy at 2.

15



49.   EFI's Board provided the 2006 Form 10-K to EFI's shareholders concurrently with the 2006 Proxy, and accordingly the financial disclosures contained in the 2005 Form 10-K altered the total mix of information available to EFI's shareholders in voting on the items to be considered at the Company's 2006 annual meeting.

50.   Under APB No. 25, "Accounting for Stock Issued to Employees" ("APB No. 25"), which was the applicable GAAP provision at the time of the option grants that are the subject of this Complaint, if the market price of the Company's stock on the date of grant was higher than the exercise price of the options, the Company was required to recognize the difference as an expense.  In each of the Company's annual reports on Form 10-K filed since 1995, EFI represented that the Company followed APB No. 25 and that no compensation cost has been recognized with respect to the Company's stock option plans.

51.   EFI's 2006 Form 10-K disclosed the Company's income statements for the years 2001 through 2005.  The Company disclosed, *inter alia*:

| (in thousands, except per share amounts . . .) | As of and for the years ended December 31, | | | | |
|---|---|---|---|---|---|
| | 2005 | 2004 | 2003 | 2002 | 2001 |
| ... | | | | | |
| **Operations** | | | | | |
| Operating expenses: | | | | | |
| General and administrative | $34,007 | $27,264 | $21,690 | $21,778 | $25,456 |
| ... | | | | | |
| Net (loss) income | ($4,067) | $38,019 | $26,508 | $15,968 | $38,940 |
| Earnings per share | | | | | |
| Net (loss) income per basic common share | ($0.07) | $0.71 | $0.49 | $0.29 | $0.73 |
| ... | | | | | |

52.   For the years 2001 through 2003, when EFI issued backdated options, the Company violated APB No. 25 by failing to account for the extra compensation paid to option grant recipients in the form of the discounted option grants.  Accordingly, the Company's financial disclosures for 2001 through 2003, as set forth in the 2006 Proxy, were materially misleading.  The Company's reported "general and administrative" expense, which includes salary expense, was *understated* by an amount equal to the "in the money" portion of the option grants.  This understatement of expense in turn resulted in the Company *overstating* net income, and net income per share for each of the years 2001 through 2003.

16



53.    The 2005 Form 10-K also contained disclosures from the Company's balance sheet for the years ended 2004 and 2005, which listed the Company's retained earnings (in thousands) at $523,516 and $519,449, respectively. These disclosures were materially false, however, because they included earnings that had accumulated throughout the 1995 through 2003 period when EFI had issued and failed to properly account for backdated stock option grants. Accordingly, the retained earnings for 2004 and 2005, as disclosed in the 2005 Form 10-K, were artificially inflated.

54.    The 2006 Proxy did not correct the materially false financial disclosures made in the 2005 Form 10-K. In addition, the 2006 Proxy includes a materially misleading statement regarding whether executive compensation is tax deductible. The 2006 Proxy explains that Section 162(m) of the Internal Revenue Code:

> generally disallows a tax deduction...for compensation over $1 million paid for any fiscal year to each of the corporation's chief executive officer and the four other most highly compensated executives officers....However, Section 162(m) exempts qualifying performance-based compensation from the deduction limit if certain requirements are met. Although the Company considers the impact of Section 162(m) when developing and implementing executive compensation programs, the Company believes that it is important and in the best interests of stockholders to preserve flexibility in designing compensation programs. Accordingly, the Company has not adopted a policy that all compensation must qualify as deductible under Section 162(m). The Company has from time to time approved, and may in the future approve, compensation arrangements for certain officers that are not fully deductible. Further, because of ambiguities and uncertainties as to the application and interpretation of Section 162(m) and the regulations issued thereunder, no assurance can be given, notwithstanding the Company's efforts, that compensation intended by the Company to satisfy the requirements for deductibility under Section 162(m) does in fact do so.

55.    The statement that no assurance can be given that the compensation intended by the Company to satisfy the requirements for deductibility will qualify is materially misleading. Since Defendants knew or should have known that options were backdated, there was no chance whatsoever that the deductibility requirements of Section 162(m) could have been met.

56.    A shareholder who knew that Company executives backdated options granted under prior plans (thereby providing not only improper compensation to EFI directors and employees but also artificially inflating net income and rendering certain tax deductions unavailable) would not have voted in favor of expanding the Compensation Committee's

17

1 ability to issue stock options under the 2004 Plan or other forms of compensation under the

2 2000 Employee Stock Purchase Plan.

3                        **VI. CLASS ACTION ALLEGATIONS**

4        57.    Plaintiff brings the First Cause of Action of this action as a class action, on

5 behalf of itself and all other persons who owned stock of EFI as of April 17, 2006, and who

6 continued to hold such stock through June 7, 2006, the date of EFI's 2006 annual meeting (the

7 "Class").  Excluded from the Class are Defendants and any person or entity related to or

8 affiliated with any of the Defendants, as well as any person or entity who received stock

9 options from EFI, whether or not vested or exercised, that were backdated.

10       58.    The First Cause of Action is properly maintainable as a class action count.

11 Pursuant to the Delaware Supreme Court authority, *Gentile v. Rossette*, 906 A.2d 91 (Del.

12 Supr. 2006), a transaction whereby a control group of the corporation secures for itself a

13 portion of the economic value and voting power of the public shareholders' shares gives rise to

14 both direct claims for the public shareholders and claims on behalf of the corporation which

15 may also be pursued derivatively by the plaintiff shareholder.  Thus, plaintiff may

16 simultaneously pursue direct, class action claims on behalf of EFI's public shareholders and

17 derivative claims on behalf of EFI which are based upon the same breaches of fiduciary duty

18 by the Director and Officer Defendants.

19       59.    The Class is so numerous that joinder of all members is impracticable.  As of

20 April 17, 2006, there were 57,086,152 shares outstanding of EFI's common stock, held by

21 individuals and entities too numerous to bring separate actions.  It is reasonable to assume that

22 holders of the common stock are geographically dispersed throughout the United States.

23       60.    There are questions of law and fact which are common to the Class and which

24 predominate over questions affecting any individual class member.  The common questions

25 include, *inter alia*, the following:

26       (a)    whether Defendants owed a duty of full disclosure to EFI's shareholders that
                required them to make complete and accurate disclosures in EFI's proxy
27              statements, annual reports, registration statements and other communications
                that reached the marketplace;
28

---

                                    18

(b)    whether Defendants backdated stock options, knew or should have known options were being backdated and/or received backdated stock options;

(c)    whether EFI's financial statements report artificially inflated net income as the result of failing to recognize compensation expenses associated with improper backdating;

(d)    whether certain Defendants issued false and misleading proxy statements;

(e)    whether EFI's proxy statements were materially false and misleading; and

(f)    whether and to what extent Plaintiffs and Class members suffered harm as a result of Defendants' misstatements and omissions.

61.    Plaintiff's claims are typical of the Class, and plaintiff is not subject to any unique defenses.

62.    Plaintiff is committed to prosecuting the Class cause of action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claim is typical of the claims of other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

63.    Plaintiff anticipates that there will be no difficulty in the management of the First Cause of Action as a class action.

64.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

65.    The prosecution of separate actions would create the risk of:

(a)    inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants; and/or

(b)    adjudications which would as a practical matter be dispositive of the interests of other members of the Class.

## VII. DERIVATIVE ALLEGATIONS

66.    Plaintiff brings the Causes of Action Two through Six below derivatively to redress injuries suffered by the Company as a direct result of Defendants' backdating of stock options.

19

1      67.    Pursuant to the Delaware Supreme Court authority, *Gentile v. Rossette*, 906

2  A.2d 91 (Del. Supr. 2006), a transaction whereby a control group of the corporation secures for

3  itself a portion of the economic value and voting power of the public shareholders' shares gives

4  rise to both direct claims for the public shareholders and claims on behalf of the corporation

5  which may also be pursued derivatively by the plaintiff shareholder.   Thus, plaintiff may

6  simultaneously pursue direct, class action claims on behalf of EFI's public shareholders and

7  derivative claims on behalf of EFI which are based upon the same breaches of fiduciary duty

8  by the Director and Officer Defendants.

9      68.    Plaintiff has owned EFI stock since October 24, 2005, continues to own EFI

10  stock, and will continue to hold EFI stock through the conclusion of this litigation.

11      69.    Plaintiff will adequately and fairly represent the interests of EFI and its

12  shareholders in enforcing and prosecuting its rights and has retained counsel competent and

13  experienced in shareholder derivative litigation.

14           **VIII. DEMAND ON THE EFI BOARD IS EXCUSED AS FUTILE**

15      70.    No demand has been made by Plaintiff on EFI's board of directors because the

16  business judgment rule does not apply to disclosures in a proxy statement.   Directors have no

17  discretion to misrepresent facts to shareholders, nor do they have discretion to omit material

18  information.   They are under an unflinching duty to accurately and fairly disclose all material

19  information to the shareholders when they seek shareholder action.

20      71.    Demand is also excused because a majority of the Board lacks the independence

21  necessary to consider any such demand.   As of the date of the filing of this complaint, the EFI

22  board consisted of the following eight directors: defendants Gecht, Rosenzweig, Cogan,

23  Gassee, Greene, Maydan, Unterberg and non-party Christopher Paisley, who became a board

24  member in August 2004.

25      72.    Gecht, as CEO of the Company, is an EFI employee who earns his livelihood at

26  the pleasure of the Board.   In 2005 alone, Gecht received more than $1.7 million in salary,

27  bonus, restricted stock awards and other compensation.   Gecht is also a recipient of stock

28  options that were unlawfully backdated.   Thus, Gecht is both financially interested in the

---

                                    20

COMPLAINT                        11025214.tif - 11/21/2006 2:59:41 PM

1  actions challenged herein and lacks independence from the other Board members, whose

2  financial interest.is detailed below. Gecht is therefore unable to legitimately exercise business

3  judgment when considering a demand.

4      73.    Rosenzweig, as EFI's President, is an employee who earns his livelihood at the

5  pleasure of the Board. In 2005 alone, Rosenzweig received more than $1.64 million in salary,

6  bonus, restricted stock awards and other compensation. Rosenzweig is also a recipient of stock

7  options that were unlawfully backdated. Thus, Rosenzweig is both financially interested in the

8  actions challenged herein and lacks independence from the other Board members, whose

9  financial interest is detailed below. Rosenzweig is therefore unable to legitimately exercise

10 business judgment when considering a demand.

11     74.    Cogan has been a director since 1992 and is a recipient of backdated stock

12 options.   Cogan is therefore financially interested and cannot validly exercise business

13 judgment in considering a demand.

14     75.    Gassee has been a director since 1990 and is a recipient of backdated stock

15 options. In addition, Gassee is now and has been a member of the Compensation Committee

16 since its inception in August 1992. As a member of the Compensation Committee, Gassee

17 was directly responsible for administering the Company's stock option plans and was directly

18 involved with the issuance of backdated stock options. Gassee is financially interested in the

19 transactions challenged herein and cannot validly exercise business judgment in considering a

20 demand.

21     76.    Greene has been a director since 2000 and is a recipient of backdated stock

22 options.  Greene is financially interested in the transactions challenged herein and cannot

23 validly exercise business judgment in considering a demand.

24     77.    Maydan has been a director since 1996 and is a recipient of backdated stock

25 options.  Maydan is financially interested in the transactions challenged herein and cannot

26 validly exercise business judgment in considering a demand.

27     78.    Unterberg has been a director since 1990 and is a recipient of backdated stock

28 options. In addition, Unterberg was a member of the Compensation Committee from February

1   1995 until at least April 17, 2003.  As a member of the Compensation Committee, Unterberg

2   was directly responsible for administering the Company's stock option plans and was directly

3   involved with the issuance of backdated stock options.  Unterberg is financially interested in

4   the transactions challenged herein and cannot validly exercise business judgment in

5   considering a demand.

6        79.    Consequently, seven of the eight members of the Company's Board are unable

7   to validly exercise business judgment in considering a demand.  Demand is therefore excused.

8                              ## IX. CLAIMS FOR RELIEF

9                                   First Cause of Action
10                      Class Claim For Breach Of The Fiduciary Duty Of Disclosure
                    (Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S.
11                    Greene, Dan Maydan, Fred Rosenzweig and Thomas I. Unterberg)

12       80.    Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its

13   complaint as though set forth in full herein.

14       81.    Plaintiff brings this claim as a direct claim against against Defendants Guy

15   Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig and

16   Thomas I. Unterberg on behalf of itself and all those similarly situated, for breach of their

17   fiduciary duty of disclosure.

18       82.    The 2006 Proxy failed to disclose that from 1995 through 2003 EFI routinely

19   backdated stock option grants to executives and employees of the Company.  The 2005 Form

20   10-K, which was disseminated to shareholders with the 2006 Proxy, reported falsely inflated

21   net income, falsely stated that options were granted at not less than 100% of fair market value

22   on the date of grant and falsely stated that the Company followed APB No. 25 in accounting

23   for stock options for the years 2001 through 2003.

24       83.    All of the foregoing false and misleading statements were material.  The

25   disclosures in and omissions from the 2006 Proxy and the 2005 Form 10-K were essential links

26   in obtaining shareholder approval for the amendments to the Company's 2004 Plan and 2000

27   Employee Stock Purchase Plan, as recommended by EFI's Board at the Company's 2006

28   annual meeting.

---

                                      22

84.    EFI's non-defendant shareholders were harmed because they were deprived of the opportunity of casting fully informed votes on the matters considered at the Company's 2006 annual special meeting.

85.    EFI's non-defendant shareholders were also harmed because their shares were improperly diluted through the dedication of 4.5 million shares of stock to the 2004 Plan pursuant to the amendments authorized at the Company's 2006 annual meeting, all to their actual damage in an amount presently unknown.  Correspondingly, the Director and Officer Defendants and the employees beholden to them increased their percentage of the Company's outstanding shares at the expense of EFI's non-defendant shareholders.

86.    The acts of each of the defendants were oppressive, fraudulent and malicious so as to entitle plaintiff to an award of punitive damages under Civil Code Section 3294 in an amount sufficient to punish defendants for their wrongful conduct.

87.    In addition to compensatory damages, the Class is entitled to pre-judgment interest.

88.    To the extent that Plaintiff prevails on this cause of action or provides a benefit to the Class through this cause of action, Plaintiff will be entitled to recover its attorneys' fees and expenses.

Second Cause of Action
Derivative Claim for Breach of the Fiduciary Duty of Disclosure
(Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene,
Dan Maydan, Fred Rosenzweig and Thomas I. Unterberg)

89.    Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its complaint as though set forth in full herein.

90.    Plaintiff brings this claim derivatively on behalf of EFI against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig and Thomas I. Unterberg.

91.    The 2006 Proxy failed to disclose that from 1995 through 2003 EFI routinely backdated stock option grants to executives and employees of the Company.  The 2005 Form 10-K, disseminated to shareholders with the 2006 Proxy, reported falsely inflated net income,

23

falsely stated that options were granted at not less than 100% of fair market value on the date of grant and falsely stated that the Company followed APB No. 25 in accounting for stock options for the years 2001 through 2003.

92.   All of the foregoing false and misleading statements were material.   The disclosures in and omissions from the 2006 Proxy and the 2005 Form 10-K were essential links in obtaining shareholder approval for the amendments to the Company's 2004 Plan and 2000 Employee Stock Purchase Plan, as recommended by EFI's Board at the Company's 2006 annual meeting.

93.   The Company was harmed because it was forced to dedicate 4.5 million shares of its stock to the 2004 Plan and the 2000 Employee Stock Purchase Plan pursuant to the tainted shareholder vote at EFI's 2006 annual meeting, all to its damage in an amount presently unknown..

94.   The Company will also suffer harm when it is forced to restate its financial statements to recognize the compensation expense for the backdated options.  The Company will incur tax liability, and possibly regulatory liability, for those necessary corrections, all to its damage in an amount presently unknown.

95.   The acts of each of the defendants were oppressive, fraudulent and malicious so as to entitle EFI to an award of punitive damages under Civil Code Section 3294 in an amount sufficient to punish defendants for their wrongful conduct.

96.   In addition to compensatory damages, EFI is entitled to pre-judgment interest.

97.   To the extent that Plaintiff prevails on this cause of action or provides a benefit to the EFI through this cause of action, Plaintiff will be entitled to recover its attorneys' fees and expenses.

Third Cause of Action
Derivative Claim For Unjust Enrichment
(Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene,
Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts)

98.   Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its complaint as though set forth in full herein.

24

99. Plaintiff brings this claim derivatively on behalf of EFI against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts.

100. To the extent that the Defendants have already authorized the issuance of, or have caused the Company to issue, to themselves or to any employee of the Company, any stock, stock options, or stock rights of any sort under the terms of the amendments to the Company's 2004 Plan or 2000 Employee Stock Purchase Plan approved by the stockholders at EFI's 2006 annual meeting, such issuances are unlawful and voidable, and should be rescinded.

101. To the extent that any Defendant has received any stock, stock options, or stock rights of any sort issued by the Company pursuant to the amendments to the Company's 2004 Plan or 2000 Employee Stock Purchase Plan approved by the stockholders at EFI's 2006 annual meeting, such Defendant has been unjustly enriched by his receipt of such distribution, and it would be unconscionable to allow him to retain the benefits of options that have already been exercised, to obtain in the future the benefits of improperly issued stock options with respect to options that have not yet been exercised, or to retain the benefits of any other compensation he may have received pursuant to such amendments.

102. The acts of each of the defendants were oppressive, fraudulent and malicious so as to entitle EFI to an award of punitive damages under Civil Code Section 3294 in an amount sufficient to punish defendants for their wrongful conduct.

103. In addition to compensatory damages, EFI is entitled to pre-judgment interest.

104. To the extent that Plaintiff prevails on this cause of action or provides a benefit to the Class through this cause of action, Plaintiff will be entitled to recover its attorneys' fees and expenses.

25

1
2
3

Fourth Cause of Action
Claim For Declaratory Judgment
(Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene,
Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts)

4          105.    Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its

5    complaint as though set forth in full herein.

6          106.    Plaintiff brings this claim against against Defendants Guy Gecht, Gill Cogan,

7    Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and

8    Jeffrey Cutts.

9          107.    An actual controversy presently exists between plaintiff and defendants and EFI

10   in that plaintiff contends that defendants breached their fiduciary duties to EFI and EFI's

11   shareholders by failing to disclose that they had backdated stock options and by falsely

12   overstating net income and understating compensation expense in EFI's financial statements.

13   Defendants also falsely represented that they granted stock options at no less than the fair

14   market value on the date of grant.  Defendants deny these contentions.  A declaration of the

15   rights and duties of the plaintiff, defendants and EFI is necessary to avoid a multiplicity of

16   actions, to determine the validity of EFI's proxy statements and financial statements, and to

17   end the continuation of the claimed misconduct and breaches of fiduciary duty.

18         108.    Plaintiff seeks a declaratory judgment that:

19              (a)    Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S.

20   Greene, Dan Maydan, Fred Rosenzweig and Thomas I. Unterberg breached their fiduciary duty

21   of disclosure by failing to disclose in the 2006 Proxy that from 1995 through 2003 EFI

22   routinely backdated stock option grants to executives and employees of the Company;

23              (b)    Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S.

24   Greene, Dan Maydan, Fred Rosenzweig and Thomas I. Unterberg breached their fiduciary duty

25   of disclosure in the 2005 Form 10-K by falsely inflating net income, falsely stating that options

26   were granted at not less than 100% of fair market value on the date of grant and falsely stating

27   that the Company followed APB No. 25 in accounting for stock options for the years 2001

28   through 2003;

26

COMPLAINT

1          (c)     the Class's shares were improperly diluted through the dedication of 4.5

2 million shares of stock to the 2004 Plan; and

3          (d)     Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S.

4 Greene, Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts, along with all

5 recipients of stock options issued pursuant to the amendment adding 4.5 million shares to the

6 2004 Plan have been unjustly enriched.

7       109.     To the extent that Plaintiff prevails on this cause of action or provides a benefit

8 to the Class and/or to the Company through this cause of action, Plaintiff will be entitled to

9 recover its attorneys' fees and expenses.

10                             Fifth Cause of Action

11               Claim For Preliminary and Permanent Injunction
       (Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene,

12          Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts)

13       110.     Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its

14 complaint as though set forth in full herein.

15       111.     Plaintiff brings this claim against against Defendants Guy Gecht, Gill Cogan,

16 Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and

17 Jeffrey Cutts.

18       112.     The Defendants named in this cause of action breached their fiduciary duties to

19 both the Class and the Company by falsely representing that stock options between 1998 and

20 2003 were granted with strike prices no less than fair market value when in fact those options

21 were granted with strike prices below fair market value due to defendants' backdating

22 activities.    Through that and other misrepresentations, defendants improperly secured

23 shareholder approval for the addition of 4.5 million shares to the 2004 Plan.

24       113.     To remedy Defendants' breaches of fiduciary duty and to prevent further harm

25 to the Class and to the Company, Plaintiff seeks both a preliminary injunction and a permanent

26 injunction enjoining the defendants:

27

28

1        (a)    from allowing the Company to issue any shares of common stock

2  pursuant to the exercise of backdated options or any other options, restricted stock or other

3  from of compensation that was received in exchange for backdated options; and

4        (b)    from granting any options under the 2004 Plan in the future.

5      114.    To the extent that Plaintiff prevails on this cause of action or provides a benefit

6  to the Class and/or to the Company through this cause of action, Plaintiff will be entitled to

7  recover its attorneys' fees and expenses.

8

9                            **Sixth Cause of Action**

                                **Claim For Accounting**

10  (Against Defendants Guy Gecht, Gill Cogan, Jean Louis Gassee, James S. Greene,
          Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg and Jeffrey Cutts)

11      115.    Plaintiff hereby realleges and incorporates paragraphs 1 through 79 of its

12  complaint as though set forth in full herein.

13      116.    Plaintiff brings this claim against against Defendants Guy Gecht, Gill Cogan,

14  Jean Louis Gassee, James S. Greene, Dan Maydan, Fred Rosenzweig, Thomas I. Unterberg

15  and Jeffrey Cutts.

16      117.    Defendants in this cause of action have yet to admit that they engaged in options

17  backdating, to identify the recipients of those options grants, or to identify the exercise prices

18  at which they actually were issued and the strike prices at which they should have been issued.

19      118.    Based upon Defendants' failure to provide EFI's shareholders with this

20  information, Plaintiff seeks an accounting of EFI's books and records to determine:

21        (a)    all current and former EFI employees who received option grants;

22        (b)    the dates on which options were actually granted;

23        (c)    the exercise prices that should have been assigned to said options had

24  they been assigned on the actual date of grant instead of backdated;

25        (d)    when said options were exercise, if applicable, or when they are

26  currently exercisable;

27        (e)    when, if applicable, said options were "re-priced;"

28        (f)    the circumstances surrounding the "re-pricing;" and

     (g)    whether said options were exchanged for other forms of compensation.

    119.   To the extent that Plaintiff prevails on this cause of action or provides a benefit to the Class and/or to the Company through this cause of action, Plaintiff will be entitled to recover its attorneys' fees and expenses.

**WHEREFORE,** Plaintiff prays for judgment as follows:

    (a)    for an order declaring that the Director Defendants breached their duty of disclosure to Plaintiff and the other EFI shareholders and that they breached their fiduciary duties to the Company;

    (b)    for an order awarding compensatory money damages, together with pre- and post-judgment interest, in an amount presently unknown representing all losses or damages sustained by the Company, the plaintiff and each shareholder member of the Class;

    (c)    for an order that an accounting of EFI's books and records be had to determine: (i) all current and former EFI employees who received option grants; (ii) the dates on which options were actually granted; (iii) the exercise prices that were assigned to said options; (iv) the exercise prices that should have been assigned to said options had they been assigned on the actual date of grant instead of backdated; (v) when said options were exercised, if applicable, or when they are currently exerciseable; (vi) when, if applicable, said options were "re-priced;" (vii) the circumstances surrounding the "re-pricing;" and (viii) whether said options were exchanged for other forms of compensation;

    (d)    for an order preliminarily and permanently enjoining the defendants from: (1) allowing the Company to issue any shares of common stock pursuant to the exercise of backdated options or any other options, restricted stock or other form of compensation that was received in exchange for backdated options; or (2) granting any options under the 2004 Plan in the future;

    (e)    for an order rescinding the EFI 2004 Plan or, in the alternative, rescinding the amendment to the 2004 Plan that increased the number of shares available for use in connection with such plan by 4.5 million shares;

    (f)    for an order rescinding the amendment to the Company's 2000 Employee Stock Purchase Plan that extended and increased an automatic share increase feature beginning with calendar year 2006;

    (g)    for an order declaring that the recipients of any options issued pursuant to the 2004 Plan, as amended after the 2006 annual meeting, have been unjustly enriched, and awarding monetary damages for the amount of the unjust enrichment;

    (h)    for an order certifying the Class;

29

1   (i)   for an order awarding punitive damages in an amount sufficient to deter these
2         defendants, and others similarly situated, from repeating the wrongs set forth in
          this Complaint;

3   (j)   for Plaintiff's costs and expenses incurred in this action, including, but not
4         limited to, experts' and attorneys' fees; and

5   (k)   for such other and further relief as may be just and proper.

6   Dated: November 21, 2006

7                                           Merrill G. Emerick (State Bar No. 117248)
                                            ANDERLINI, FINKELSTEIN,
8                                           EMERICK & SMOOT
                                            A PROFESSIONAL CORPORATION
9                                           400 South El Camino Real, Suite 700
                                            San Mateo, CA 94402
10                                          Telephone: (650) 348-0102
11                                          Facsimile: (650) 348-0962

12                                              - and -

13  OF COUNSEL:                             Mary S. Thomas (State Bar No. 175110)
    Stuart M. Grant                         GRANT & EISENHOFER P.A.
14  Michael J. Barry                        Chase Manhattan Centre
15  Cynthia A. Calder                       1201 N. Market Street
    GRANT & EISENHOFER P.A.                 Wilmington, DE 19801-2599
16  Chase Manhattan Centre                  Telephone: (302) 622-7000
    1201 N. Market Street                   Facsimile: (302) 622-7100
17  Wilmington, DE 19801-2599
18  Telephone: (302) 622-7000              *Attorneys for Plaintiff*
    Facsimile: (302) 622-7100

19
20
21
22
23
24
25
26
27
28

                                    30

COMPLAINT                                11025214.tif - 11/21/2006 2:59.41 PM

# EXHIBIT B

1  DOUGLAS J. CLARK, State Bar No. 171499 (dclark@wsgr.com)
   IGNACIO E. SALCEDA, State Bar No. 164017 (isalceda@wsgr.com)
2  DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
   JOHN D. COOKE, State Bar No. 233267 (jcooke@wsgr.com)
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300
   Facsimile:  (650) 565-5100
6
   Attorneys for Defendant
7  Thomas I. Unterberg

**ENDORSED FILED**
**SAN MATEO COUNTY**

DEC  5 2006

Clerk of the Superior Court
By ____P. PEDRINI____
        DEPUTY CLERK

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SAN MATEO

10
   CITY OF ANN ARBOR EMPLOYEES'           )   CASE NO.:  CIV 459145
11 RETIREMENT SYSTEM, on Behalf of Itself and )
   All Others Similarly Situated, and Derivatively )   NOTICE OF GENERAL
12 on Behalf of Nominal Defendant          )   APPEARANCE AND ACCEPTANCE
   ELECTRONICS FOR IMAGING, INC.,          )   OF SERVICE BY DEFENDANT
13                                         )   THOMAS I. UNTERBERG
              Plaintiff,                   )
14                                         )
         vs.                               )
15                                         )
   GUY GECHT, GILL COGAN, JEAN-LOUIS       )
16 GASSEÉ, JAMES S. GREENE, DAN            )
   MAYDAN, FRED ROSENZWEIG, THOMAS I.      )
17 UNTERBERG, and JOSEPH CUTTS,            )
                                           )
18            Defendants,                  )
                                           )
19        - and -                          )
                                           )
20 ELECTRONICS FOR IMAGING, INC.,          )
                                           )
21            Nominal Defendant.           )
                                           )
22                                         )
                                           )
23 _____)

24         PLEASE TAKE NOTICE that defendant, Thomas I. Unterberg, by and through his

25 undersigned attorneys, hereby appears before this Court and, accordingly, accepts service of

26 process in the above-captioned action, dated November 22, 2006, in the Superior Court for the

27 County of San Mateo.  Cal. Code Civ. P. § 410.50(a).

28

                     Notice Of General Appearance And Acceptance
                     Of Service By Defendant Thomas I. Unterberg
                            Case No. CIV 459145

1

2   Dated:  December 5, 2006

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA  94304-1050


By: _____
      Ignacio Salceda

    Attorneys for Defendant
    Thomas I. Unterberg